**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

| | | |
|---|---|---|
| **JOSE KEVIN GONZALEZ PAYNE, on behalf of himself and all others similarly situated,** | ) | |
| **Plaintiff** | ) | |
| **v.** | ) | **Case No.** 4:26-cv-484-RGJ |
| **VGW, LTD.: VGW HOLDINGS US; VGW US, INC.; VGW HOLDINGS, LTD.; VGW CANADA INC.; VGW GP LTD; VGW MALTA, LTD; VGW LUCKYLAND, INC., and VGW GAMES, LTD.,** | ) | |
| **Defendants.** | ) | |

## STATEWIDE CLASS ACTION COMPLAINT

Plaintiff Kevin Payne., an adult resident citizen of Daviess County, Kentucky, on his own behalf and on behalf of all others similarly situated in the state of Kentucky, files this statewide class action complaint against VGW, Ltd.; VGW Holdings US; VGW US, Inc., VGW Holdings, Ltd; VGW Canada, Inc., VGW Group Ltd; VGW Malta Ltd; VGW Games, Ltd; and VGW Luckyland, Inc. (collectively "VGW" or "Defendants.")

## INTRODUCTION

1. This statewide class action seeks recovery of illegal gambling losses by Kentucky residents who played VGW's illegal online gambling games. Plaintiff seeks, on his own behalf, and on behalf of all similarly situated Kentucky residents:

(1) a determination that VGW's games violate federal law, and that VGW's online terms of service setting out the terms and conditions under which the illegal gambling is conducted are therefore unenforceable in federal court;

(2) a determination that the online terms of service and the arbitration provision contained therein are each unenforceable and void;

(3) recovery under Kentucky's gambling loss recovery act, K.R.S. 372.020.

**PARTIES, JURISDICTION, AND VENUE**

2. Plaintiff Kevin Payne is an adult resident citizen of the Commonwealth of Kentucky, and resides at 1213 Cary Court in Owensboro, Daviess County, Kentucky, which is within this district and division.

3. Defendants VGW, Ltd; and VGW Holdings, Ltd, are foreign corporations headquartered in Perth, Australia. They each do business through their online gambling games in all counties in Kentucky, including Plaintiff's resident county. Neither of them has a physical place of business in the state of Kentucky.

4. Defendants, VGW Holdings US, Inc.; VGW US, Inc.; and VGW Luckyland, Inc., are each a corporation organized under the laws of the state of Delaware, with its principal place of business in Boulder, Colorado. They each do business through online gambling games in all counties in Kentucky, including

Plaintiff's resident county. None of them have a physical place of business in the state of Kentucky

5. Defendant, VGW Canada, is a corporation organized under Canadian law, with its principal place of business in Toronto, Ontario, Canada. It does not have a physical place of business in Kentucky.

6. Defendants, VGW GP Limited; VGW Malta Limited; and VGW Games Limited, are limited liability companies incorporated under Maltese Law, with their principal places of business in Birkirkara, Malta. None has a physical place of business in Kentucky.

7. The events giving rise to plaintiff's claims occurred in this district and division, such that venue is proper in this forum pursuant to 28 U.S.C. § 1391(b)(2).

8. Plaintiff, the plaintiff class, and defendant are citizens of different States, and the aggregated amount in controversy in this class action exceeds $5 million, exclusive of interests and costs. This Court therefore has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

9. This court has personal jurisdiction over VGW under Kentucky's long-arm statute, KRS 454.210, which deems the Kentucky Secretary of State as the statutory agent for service of process of the Defendant. The Kentucky Secretary of State is directed to send an electronically attested copy of the Summons and Complaint to the Defendant at the following addresses:

VGW, Ltd., Level 8 & 10, 15-17 William St., Perth, WA 6000, Australia

VGW Holdings, Ltd., Level 11, 15017 William Street, Perth, WA 6000, Australia

VGW Holdings US, Inc., 1209 North Orange Street, Wilmington, DE 19801

VGW US, Inc., 4845 Pearl East Cir., Ste 118 PMB 189921, Boulder, CO 80301-6112

VGW Luckyland, Inc., 1881 9th Street, Ste 202, Boulder CO, 80302

VGW Canada, 215 Spadina Ave, Toronto, ON M5T 2CZ Canada

VGW Gp. Limited, Trident Park, Notabile Gardens No6, Level 3, Central Business District, Mdina Road, Zone 2 Birkirkara, CBD 2010 Malta

VGW Malta Limited, Trident Park, Notabile Gardens No6, Level 3, Central Business District, Mdina Road, Zone 2 Birkirkara, CBD 2010 Malta

VGW Games Ltd., Trident Park, Notabile Gardens No6, Level 3, Central Business District, Mdina Road, Zone 2 Birkirkara, CBD 2010 Malta

10. This Court has personal jurisdiction over Defendant because the company has sufficient minimum contacts with Kentucky to support specific personal jurisdiction in the state, and those contacts are directly related to Plaintiffs' claims. See International Shoe Co. v. Washington, 326 U.S. 310 (1945).

11. VGW's minimum contacts with the state of Kentucky include ongoing contractual relationships created by the terms and conditions on Defendant's websites, Luckyland Slots, Chumba Casino, and Global Poker. Defendant required Plaintiff and all other Kentucky customers to agree to these terms. Both the Sixth Circuit and the United States Supreme Court, among many others, have found that personal jurisdiction is proper "where a defendant 'has created continuing obligations between himself and the residents of the forum.'" Air Products and Controls, Inc. v. Safetech

Intern., Inc., 503 F.3d 544, 551 (6th Cir. 2007) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). Furthermore, the Western District of Washington applied these principles to find that one of VGW's competitors, an online gambling business headquartered outside the United States, purposely availed itself of doing business in the state of Washington, making it subject to personal jurisdiction there:

> Playtika has purposefully availed itself of the privilege of doing business in Washington. Unlike cases involving lone or limited transactions, the record shows that Playtika has used its apps to sell many coins to many users located in Washington See Opp'n, Dkt # 57-2, Ex. 2 at 5-10. In addition, similar to Helicopter Transport Services, Playtika's sales to its users are part of ongoing relationships. 253 F. Supp. 3d at 1129. To turn a profit, Playtika's games rely on at least some users repeatedly running out of coins and then buying more in order to continue playing. Playtika thus "contemplates future consequences" when it sells coins to its users, satisfying the purposeful availment analysis. Burger King, 471 U.S. at 479, 105 S.Ct. 2174.

Wilson v. Playtika, Ltd., 349 F.Supp.3d 1028, 1035 (W.D. Wash. 2018). The same analysis holds true here, both because of the volume of transactions undertaken by VGW in Kentucky and the creation of continuing relationships with its customers in the state.

12. Defendant's contacts with Kentucky also include direct solicitations and other communications, instituted by the company, with customers in Kentucky. These include in-game messages and advertisements sent to players, emails, social media advertisements, and other forms of communications. Further, social and sweeps casino companies specifically target individuals who spend money on the apps, including by

sending them direct, targeted advertisements to play the game, purchase coins, or participate in particular features of the games. See "How social casinos leverage Facebook user data to target vulnerable gamblers," PBS News Hour, available at https://www.pbs.org/newshour/show/how-social-casinos-leverage-facebook-user-data-to-target-vulnerable-gamblers (last accessed October 12, 2025). These communications and advertisements directed by Defendant to particular current and prospective players in Kentucky constitute purposeful contacts with the state.

13. VGW's contacts with Kentucky also include the payment of redemptions to peo0ple that win on their illegal gambling games. VGW's websites, including Luckyland Slots, Chumba Casino, and Global Poker, pay out such redemptions to customers, sending the money to customers' bank accounts in Kentucky. As the screenshots from VGW's Chumba Casino website below demonstrate, VGW requires verification that includes a state issued ID to link a bank account, so it indisputably knows the states to which it is sending or receiving money, including when it is sending money to Kentucky or receiving money from Kentucky customers.







## RELEVANT FACTS

### A. VGW's Gambling Games

14. VGW is a game developer that has created online games that simulate slot machines and other gambling games. It provides these games to the public in Kentucky at websites including luckylandslots.com, chumbacasino.com, and

15. VGW's games operate with two forms of virtual currency. Both are typically purchased together in packages by players. The first is typically called "gold coins" in the industry and on defendant's website. Gold coins when won cannot be redeemed for real-world currency.

16. The other virtual coins used by VGW are called sweeps coins. VGW maintains that this form of coins cannot be purchased. However, when individuals purchase packages of gold coins, they are "given" a set number of sweeps coins. Below is a screenshot from VGW's website demonstrating coins are sold in packages containing both gold coins and sweeps coins. Once purchased, these sweeps coins can be risked on the gambling games for winnings that can be redeemed for real-world currency. Thus, when customers play with them, they are gambling real money, whether the Defendant describes it this way or not.




17. Moshy's games are games of chance. Moshy makes available online games in a variety of formats, including at the Moozi.com website. Moozi.com offer numerous casino-style games, especially slot machine games. Here is an example of one of these games:




## B. Defendant's Games Have Gravely Harmed the Class and the State of Kentucky.

18. The social ills caused by "social casino" and "sweeps casino" games are well-documented. Media reports how gambling addicts spend enormous, and completely unaffordable, amounts of money on these casino games. One nurse in Houston is reported to play a slot machine game similar to defendants' here for a minimum of two hours a day. (Ex. 1, https://www.nbcnews.com/tech/technews/addicted-losing-how-casino-apps-have-drained-people-millions-n1239604 (last accessed on Aug. 19, 2024)). Between her and her husband, who plays the game with her, she estimates they have lost $150,000. She asked NBC News to withhold her name "so her family does not find out how much money they have spent on the game." (Id.). She said her and her husband "lie in bed next to each other, we have two tablets, two phones and a computer and all these apps

spinning Reel Rivals at the same time. We normalize it with each other." (Id.). This is not an isolated instance.

19. NBC News spoke to 21 people, including Shellz [the Houston nurse] and her husband, who said they were hooked on the casino-style games and spent significant sums of money. They described feelings of helplessness and wanting to quit but found themselves addicted to the games and tempted by the company's aggressive marketing tactics. "Most of the 21 players wished to remain anonymous, as they were ashamed of their addictions and did not want their loved ones to find out about their behavior." (Id.). For example, a "42-year-old Pennsylvania woman said she felt saddened that she spent $40,000 [on a social casino app that competes with defendants'] while working as an addiction counselor. 'The whole time I was working as an addiction counselor, I was addicted to gambling and with no hope of winning any money back,' she said." Such problems are only exacerbated by "sweeps casinos," where users have access to gambling games where they can win cash money, and not just additional play-time, twenty-four hours a day, seven days a week.

20. Some of the "social casino" slot machines available on the internet do not afford gamblers the opportunity to win real money, instead allowing them to gamble only "virtual coins." VGW's websites, including Chumba Casino and Luckyland Slots, however, are among a growing number of "sweeps casinos" that allow users to play not only with regular virtual currency, that is not redeemable for real money, but also

with special currency, generally called Sweeps Coins in the industry, that can be redeemed for actual cash.

21. Anecdotal reports of gambling addictions in connection with social casino and sweeps casino games like defendants' are buttressed by recent scientific studies that confirm that such apps not only appeal to gambling addicts, but have a particular appeal to teenagers. One of the more troubling statistics comes from studies that show that 30% of users of these games between the ages of 12 and 18 later become regular gamblers. Hollingshead, et al., "Motives for playing social casino games and the transition from gaming to gambling (or vice versa): social casino game play as harm reduction?" 46 Journal of Gambling Issues 43 (2021).

22. Companies in the social casino industry, including Defendants, have extracted tens of millions of dollars from Kentucky's economy in the last five years, all without adding anything to the economy of the state or paying a dime in taxes to Kentucky's treasury. Instead, the money extracted from Kentucky's economy ends up not just in places like VGW's home country of Australia, but also in countries like Israel, Hong Kong, Canada, Malta, the Isle of Man, and Cyprus, where other companies in the industry are headquartered. According to research on the industry as a whole, social casinos and sweeps casinos had estimated 2024 revenues of 7.1 billion and 10.6 billion, respectively. https://kpmg.com/kpmg-us/content/dam/kpmg/pdf/2025/sweepstakes-gaming-emerging-industry-primer.pdf.

Even if Kentucky consumers represent but a small percentage of that total, the reality is that a great deal of money is being siphoned from the state's economy each year.

**C. Defendant Has the Capability to Avoid Having Customers in Jurisdictions Where the Games are Illegal.**

23. The technology exists that would allow Defendant to stop allowing its games to be played by Kentucky residents, or, in fact, to never have allowed them to be played in the Commonwealth at all. This technology is known as geofencing.

24. Online companies use tools that target or avoid specific geographical areas or jurisdictions all the time. For example, they deliberately avoid particular jurisdictions to blackout local sports events to boost ticket sales, or to avoid overseas jurisdictions where certain content is unwelcome or illegal.

25. In Kentucky itself, the Legislature recently passed a statute legalizing and regulating certain kinds of online sportsbook betting. As part of that legislation, the Legislature required registered sportsbook operators to only allow those physically present in Kentucky to make bets:

> A sports wagering licensee or service provider shall utilize geolocation or geofencing technology to ensure that wagers are only accepted from patrons who are physically located in the Commonwealth.

K.R.S. 230.805(3)(g).

26. Online gaming companies clearly have the technology to prevent users from accessing their games in particular jurisdictions. For example, VGW recently pulled out of the state of Michigan, and other companies have pulled out of other states

using geofencing technology. See Prominent Social Casino Operator Pulling Out of Michigan, May 1, 2024, available at https://www.playusa.com/chumba-exiting-michigan-online-casinos/ (last visited July 23, 2024). VGW could have done the same with respect to Kentucky, but it has chosen not to, despite the fact that its games are clearly illegal under Kentucky law.

**D. Plaintiff Lost Money on Defendant's Website**

27. Plaintiff Kevin Payne created an account on VGW's Luckyland Slots website. He purchased a package containing both gold coins and sweeps coins. He lost more than five dollars worth of sweeps coins in a 24-hour period.

## CLASS ALLEGATIONS

28. Plaintiff seeks to certify and represent a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The class sought to be certified is defined as follows:

> All Kentucky residents who spent money on VGW's websites (Luckyland Slots, Chumba Casino, and Global Poker) within the last five years and lost a minimum of five dollars in a twenty-four-hour period, during the five years preceding the filing of the complaint and continuing to a date to be set by the Court following certification. All employees of the Court, and plaintiff's counsel, and their families, are excluded.

29. This class action satisfies the numerosity requirement of Rule 23(a)(1) because joinder of all members of the plaintiff class is impracticable. There are thousands of Kentucky residents who are members of the class.

30. This class also satisfies the commonality requirement of Rule 23(a)(2) because there are central questions of fact and law that are common to the class. Such common questions include, at a minimum (a) whether VGW's games are games of chance; (b) whether individuals playing with sweeps coins can recover real money; (c) whether VGW's games constitute illegal gambling under Kentucky law; (d) whether class members are entitled to recover their losses pursuant to Section 372.020 of the Kentucky Revised Statutes; (e) whether VGW's terms of service are unenforceable under federal law because they set forth the terms and conditions under which illegal gambling under federal law occurs: and (f) whether VGW's terms of service, and the arbitration agreement contained therein, are each void and unenforceable under Kentucky law.

31. The proposed class satisfies the typicality requirement of Rule 23(a)(3) because the named plaintiff's claims are typical of the claims of the class members. Both plaintiff and the class members lost money in an effort to win additional money with sweeps coins on VGW's illegal gambling games.

32. The named plaintiff will fairly and adequately represent the interests of the class pursuant to Rule 23(a)(4). Plaintiff has no interests that conflict with the interests of the class. Furthermore, plaintiff has retained competent and experienced counsel with decades of experience litigating class cases.

33. Plaintiff seeks certification of the class pursuant to Rule 23(b)(3), which allows class treatment of a claim where:

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

34. The common questions of law and fact in this case easily predominate over any issues affecting only individual class members. The only individual issue presented by these class members is the exact amount of money damages to which each class member is entitled. Such damages issues are routinely held not to predominate over common questions in cases like this. Indeed the individual damages issues can be quickly and accurately resolved by examining VGW's own records.

35. Class treatment is by far superior to individual litigation as a fair and efficient way to adjudicate this controversy. Given the relatively small individual amounts at issue, it is unlikely that there would be any adjudication of the class claims in this case at all absent their litigation in a class setting. For this reason, none of the class members have any interest in controlling the prosecution of separate actions.

Likewise, to our knowledge, no class member has commenced a pending action concerning the controversy.

36. It would be much more desirable to concentrate this case in one action rather than allow the prosecution of individual actions because, as noted, such individual actions would likely never be filed because class members would be unlikely to have any motivation to file an individual suit.

37. Plaintiff's counsel foresee no particular difficulties in managing this case as a class action because all of the necessary information to compensate the individual class members is contained in VGW's own records concerning users' purchases and in the records of the platforms that facilitate the service. Defendants and the platforms defendants use to provide the games keep extensive records which will demonstrate not only the aggregate amounts lost by players in Kentucky, but the identities of the individual players and the amounts of their individual losses. This information is easily ascertainable in discovery.

## MOSHY' S GAMES VIOLATE KENTUCKY LAW

38. Unregulated gambling is illegal in Kentucky, and there is a strong public policy against unregulated gambling in this state. The state's strong public policy against gambling includes a statutory right of persons who lose money or other things of value on illegal gambling to recover their money. K.R.S. 372.020.

39. Kentucky law defines gambling as follows:

> "Gambling" means staking or risking something of value upon the outcome of a contest, game, gaming scheme, or gaming device which is based upon an element of chance, in accord with an agreement or understanding that someone will receive something of value in the event of a certain outcome. "Gambling" includes playing or offering for play any game, contest, or competition utilizing a gambling device."

K.R.S. § 518.010(6)(a).

40. VGW's games are illegal under Kentucky law because players can risk something of value (the sweeps coins) on the outcome of a game of chance in the hope that they will receive something of value (real money) in return.

41. Because the gambling games are illegal in Kentucky, when such games are played in Kentucky, they are also illegal under federal law pursuant to 18 U.S.C. § 1955, as more fully set out in Count One below.

## CLAIMS FOR RELIEF

### COUNT ONE: SEEKING A DETERMINATION THAT THE GAMBLING ON MOSHY'S WEBSITES IS ILLEGAL UNDER FEDERAL LAW, MAKING DEFENDANT'S TERMS OF SERVICE UNENFORCEABLE IN FEDERAL COURT

42. Plaintiff incorporates the factual and legal averments of paragraphs 2-41 as if fully set forth in this count.

43. Plaintiff seeks, on behalf of himself and the class, a ruling from the appropriate tribunal that:

a. VGW's conduct in Kentucky is an "illegal gambling business" under 18 U.S.C. § 1955:

b. The "Terms of Service" found on VGW's websites set out the terms and conditions under which VGW's illegal gambling is conducted; and

c. The Terms of Service are unenforceable in federal court.

44. The relevant language of 18 U.S.C. Section 1955 states:

(1) "Illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such a business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

45. As to the first element required to find an illegal gambling business under Section 1955, VGW's games, as played with the sweeps coins, are illegal gambling under Kentucky law. As explained above, Kentucky law bans unregulated gambling, defined as risking anything of value on a game of chance in an attempt to win something of value.

46. Notwithstanding VGW's misrepresentation to the contrary, when played with sweeps coins, defendant's games constitute real money gambling because users can get sweeps coins by spending real money, can risk those sweeps coins on games of chance to try and win more, and can redeem their sweeps coins for cash.

47. As to the second element under Section 1955, VGW certainly employs more than 5 persons who conduct, finance, manage, supervise, direct or own all or part of its business.

48. The third element of Section 1955 is also met. VGW has both been in business for more than 30 days in Kentucky, and has had gross revenue of more than $2000 in a single day. VGW has conducted business in Kentucky for multiple years, and has collected gross revenue of more than $2000 in a single day on multiple occasions.

49. Because all three elements of Section 1955 are met, VGW's conduct in Kentucky constitutes an illegal gambling business. Claimant's request for a ruling to this effect is due to be granted.

50. Because VGW's conduct constitutes an illegal gambling business, the Terms of Service found on the company's website, which set out the terms and conditions under which the illegal gambling thereon is conducted, are unenforceable under federal law. Federal Courts, pursuant to United States Supreme Court precedent, are not permitted to enforce a contract in aid of illegal activity. <u>See</u> <u>Kaiser Steel Corp. v. Mullins</u>, 455 U.S. 72, 84 (1982), which held:

> It is . . . well established . . . that a federal court has a duty to determine whether a contract violates federal law before enforcing it. "The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in . . . federal statutes. . . . Where the enforcement of private agreements would be violative of that policy, it is the obligation of courts to refrain from such exertions of

judicial power."

(quoting Hurd v. Hodge, 334 U.S. 24, 34-35 (1948)).

**COUNT TWO: SEEKING A RULING THAT DEFENDANT'S TERMS OF SERVICE AS A WHOLE AND THE ARBITRATION PROVISION ITSELF ARE EACH VOID UNDER KENTUCKY LAW**

51. Plaintiff incorporates the factual and legal averments of Paragraphs 2-50 by reference as if fully set forth in this count.

52. As set forth above, defendants' games are governed by terms of service that facilitate the illegal gambling. The terms of service are therefore void pursuant to Section 372.010, which states:

> Every contract, conveyance, transfer or assurance for the consideration, in whole or in part, of money, property or other thing won, lost or bet in any game, sport, pastime or wager, or for the consideration of money, property or other thing lent or advanced for the purpose of gaming or lent or advanced at the time on any betting, gaming, or wagering to a person then actually engaged in betting, gaming, or wagering, is void.

K.R.S. § 372.010.

53. VGW's terms and conditions also contain provisions within the arbitration agreement that exist in aid of the illegal gambling conduct, making the arbitration agreement itself void and unenforceable. For example, provisions in the arbitration agreement attempt to exculpate VGW from all liability, including for intentional illegal conduct, and bar customers from arbitrating or litigating private attorney general or qui tam claims. These provisions attempt to immunize VGW from Kentucky's gambling statutes, but this attempt must fail.

54. Plaintiff seeks on his own behalf and on behalf of the class, a ruling that VGW's terms of service, and, separately, the arbitration agreement contained therein, are each void under Kentucky law.

**COUNT THREE: CLASS CLAIMS FOR INDIVIDUAL LOSSES**

55. Plaintiff incorporates the factual and legal averments of Paragraphs 2-54 by reference as if fully set forth in this count.

56. The Kentucky Revised Statutes provide a statutory civil cause of action to recover money paid and lost due to gambling. Section 327.020 provides:

> If any person loses to another at one (1) time, or within twenty-four (24) hours, five dollars ($5) or more, or anything of that value, and pays, transfers or delivers it, the loser or any of his creditors may recover it, or its value, from the winner, or any transferee of the winner, having notice of the consideration, by action brought within five (5) years after the payment, transfer or delivery. Recovery may be had against the winner, although the payment, transfer or delivery was made to the endorsee, assignee, or transferee of the winner.

K.R.S. § 372.020.

57. On behalf of himself and all others similarly situated, Adrian Smith, Jr. seeks for each class member recovery of the amount paid through purchases on VGW's websites (Chumba Casino, Luckyland Slots, and Global Poker) within the five years preceding the filing of this complaint minus any amounts that player was actually paid back as a result of winnings, pursuant to Section 372.020 of the Kentucky Revised Statutes.

**COUNT FOUR: ALTERNATIVE CLAIM UNDER K.R.S. § 372.040**

58. Plaintiff incorporates the factual and legal averments of Paragraphs 2-57 by reference as if fully set forth in this count.

59. Section 372.040 provides an additional right to recover gambling losses to "any other person" if the loser does not sue within six months:

> If the loser or his creditor does not, within six (6) months after its payment or delivery to the winner, sue for the money or thing lost, and prosecute the suit to recovery with due diligence, ***any other person*** may sue the winner, and recover treble the value of the money or thing lost, if suit is brought within five (5) years from the delivery or payment.

K.R.S. § 372.040.

60. If, for any reason, Plaintiff and the class cannot recover under Count 3 pursuant to K.R.S. § 372.020, Claimant brings a claim under Section 372.040 for treble the total of the gambling losses of Kentucky residents who played VGW's illegal games during the period between six months and five years prior to the filing of this complaint.

**PRAYER FOR RELIEF**

Pursuant to the legal and factual averments above, Plaintiff respectfully asks this court to:

1. Take jurisdiction of this cause;
2. Following discovery, certify this case as a class action pursuant to Rule 23(b)(2);
3. Appoint the undersigned as Class Counsel and the named plaintiff as class representative;

4. Enter a final judgment against VGW awarding plaintiff and the class members a refund of their net losses on VGW's illegal gambling games in the period between five years prior to the filing of the complaint and the entry of judgment under Kentucky's gambling loss recovery statute;
5. Award Class Counsel reasonable attorneys' fees and expenses to be paid from the common fund judgment in favor of the class;
6. Award the plaintiff a reasonable sum of money for his services in this case on behalf of the class, also to be paid out of the judgment in favor of the class;
7. Award interest and costs; and
8. In the alternative, if plaintiff and the class cannot, for any reason, recover pursuant to K.R.S. § 372.020, enter judgment against VGW awarding plaintiff treble the total of Kentuckians' losses between six months and five years prior to the filing of this complaint, pursuant to K.R.S. § 372.040; and
9. Award any other relief to which the Court finds plaintiff and the class are entitled.

Respectfully submitted this 20th day of July, 2026.

/s/ Christopher L. Rhoads
Christopher L. Rhoads
RHOADS & RHOADS PSC
115 East Second Street
P.O. Box 2023
Owensboro, KY 42302-2023
Telephone: 270.683.4600
Facsimile: 270.683.1653
chris@rhoadsandrhoads.com

and

Dargan M. Ware (pro hac vice anticipated)
John E. Norris (pro hac vice anticipated)
DAVIS & NORRIS, LLP
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
dware@davisnorris.com
jnorris@davisnorris.com
Attorneys for Plaintiff